IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

VICKI J. JOHNSON,                    )
                                     )
            Plaintiff,               )
                                     )
v.                                   ) Case No. CIV-16-073-RAW-KEW
                                     )
NANCY A. BERRYHILL, Acting           )
Commissioner of Social               )
Security Administration,             )
                                     )
            Defendant.               )

**REPORT AND RECOMMENDATION**

Plaintiff Vicki J. Johnson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on June 11, 1953 and was 61 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a motel light housekeeper and builder of refrigerator liners. Claimant alleges an inability to work beginning December 31, 2011 due to limitations

3

resulting from lumbosacral spine disorder, cervical spine disorder, and neuropathy.

**Procedural History**

On July 5, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and on September 18, 2012, she filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge ("ALJ") Doug Gabbard, II by video on July 9, 2014 with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. The ALJ issued an unfavorable decision on January 8, 2015. On February 10, 2016, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to make a proper credibility determination on Claimant's pain; (2) failing to include all of Claimant's limitations in her RFC; (3) failing to find all of Claimant's severe impairments at step two; (4) failing to resolve a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT"); and (5) failing to make the appropriate findings at step four.

## Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairment of degenerative disc disease. (Tr. 13). He concluded that Claimant retained the RFC to perform a full range of light work. (Tr. 14). Additionally, after consultation with a vocational expert, the ALJ determined that Claimant could perform her past relevant work as a housekeeper. (Tr. 18). Based upon these findings, the ALJ concluded Claimant was not disabled from December 31, 2011 through the date of the decision. (Tr. 19).

Claimant challenges the ALJ's consideration and findings on credibility - particularly as they relate to her subjective claims of pain. Claimant testified that in 2012, she was hurt in a car wreck which prevented her from working. (Tr. 35). She stated that she experienced a lot of trouble with her back with muscle spasms.

Id. Claimant also had problems with her neck and right leg and arm. (Tr. 36). Problems with her foot made it where she could not walk right. Id. She testified that she got tired easily and had trouble breathing. Id. Claimant stated that she had trouble sitting and standing all day long. (Tr. 37). She testified further that she had to alternate from sitting to standing and standing to sitting every 30 minutes. Id. Claimant stated she could not straighten back up after bending at the waist and that she had to pull up on something to help her get up. (Tr. 38). She can help her sister in dusting and light work at a hotel her sister owns. (Tr. 38-39). She cannot carry laundry but can clean bathrooms on occasion. She does not change sheets. (Tr. 39). The wet laundry weights 40 to 50 pounds and she cannot carry it but another girl performs this work. (Tr. 41).

Claimant testified that she has sharp pain in her neck and shoulder that runs down her leg and "messes up" her foot. (Tr. 40). Claimant is exhausted after her part time work. (Tr. 42). She takes Lorcet and Soma and lays down after work. Id.

Claimant states that her daughter does housework, cooking, cleaning, and grocery shopping. (Tr. 42-43). Her daughter also does the laundry. (Tr. 43). Her daughter also helps her put her pants on when she has muscle spasms. (Tr. 45). She lives in a

trailer park and lawn work is done for her. Id. She spends her time watching TV. (Tr. 44). She sometimes shops at Wal-Mart and the grocery store. Id.

The ALJ discounted Claimant's credibility on several fronts. He found Claimant's work history indicated she earned essentially the same as before the alleged onset date. He concluded that this eroded the credibility of her statements that her impairment significantly affected her ability to work. (Tr. 18). He also determined Claimant's statements that she needed help putting on her pants was belied by the fact she bent over to put on her shoes at the consultative examination. He did not entirely discount her pain but just the degree of limitation alleged by Claimant. Her daily activities as well as her work at her sister's motel also weighed against her credibility. Id. The ALJ also noted that none of Claimant's treating physicians imposed any functional restrictions on Claimant's activities such that light work would be precluded. Id.

On May 23, 2011, Claimant underwent an MRI which revealed degenerative disc disease with a mild diffuse disc bulge at L1-L2, moderate facet arthropathy at L2-L3, mile diffuse disc bulge with facet arthropathy and mild spinal stenosis at L4-L5, and mild diffuse disc bulge with mild facet arthropathy at L5-S1. (Tr.

7

273). Claimant received medication and refills in February of 2012, November of 2012, February of 2013, and March of 2013. (Tr. 306-08).

On November 20, 2012, Claimant underwent a consultative examination by Dr. Ronald Schatzman. Recognizing Claimant's assertion of pain, Dr. Schatzman found no edema in the hands, knees, or pretibial areas, grip strength at 5/5 bilaterally strong and firm. Claimant was able to perform both gross and fine tactile manipulation, finger to thumb opposition was adequate, knees showed no effusion or edema and were stable in all range of motion exercises. Claimant's cervical spine was non-tender with full range of motion, thoracic spine was non-tender with full range of motion, and lumbar-sacral spine was non-tender with full range of motion. Dr. Schatzman found no scoliosis, increased kyphosis, or increased lordosis. Straight leg raising reflex was negative bilaterally in both sitting and supine positions. He found Claimant to move as though she had a backache. Dr. Schatzman noted Claimant bended freely to put her shoes on. (Tr. 299). He also observed Claimant's gait was safe and stable with appropriate speed. She did not ambulate with the aid of assistive devices with no identifiable muscle atrophy. Heel/toe walking was normal. Tandem gait was within normal limits. (Tr. 300).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give

9

reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ's findings on credibility were supported by the record. His analysis of the inconsistencies between Claimant's allegations of pain and her treatment record lend support for those findings. It is not merely the activities of daily living which contradict the level of pain and associated functional limitations asserted by Claimant but also the part time work in which she engaged. This Court finds no error in the ALJ's credibility analysis.

**RFC Assessment**

Claimant contends the ALJ should have included several additional functional restrictions in his RFC determination. Specifically, Claimant asserts the ALJ should have found Claimant was required to take breaks throughout the day to rest, must spend time in a reclined position, and must rest due to a lack of sleep. Claimant contends any one of these limitations would have brought about a more restrictive RFC.

"[R]esidual functional capacity consists of those activities

that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

The restrictions Claimant seeks to include in the RFC were considered by the ALJ in acknowledging Claimant's testimony. Claimant's part time work and the activities included in that work preclude the inclusion of these restrictions in the ALJ's RFC assessment. The ALJ adequately included all of Claimant's

11

limitations which were supported by the medical and evaluative opinion evidence in the RFC.

## Step Two Findings

Claimant next asserts the ALJ should have included the additional severe impairments of low back and neck pain at step two. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291–292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart,

350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28.  At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(1)(D).  The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments.  Moreover, he considered Claimant's back and neck pain.  He did conclude objective findings did not justify considering the conditions to be severe impairments.  Since he did not deny benefits at step two based upon the lack of any severe impairments, the ALJ's failure to include these conditions does not constitute reversible error.

### Step Four Analysis

Claimant contends that the ALJ failed to resolve a conflict

between the vocational expert's testimony regarding the requirements of her past relevant work as a housekeeper and the *DOT*. Claimant testified that she did not perform the lifting of laundry which she now contends caused a conflict between the vocational expert's testimony and the *DOT*.

In analyzing Claimant's ability to engage in her past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). This Court has determined that the ALJ's RFC assessment was not erroneous.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). Claimant testified to the demands of her past relevant work. (Tr. 38-40). The vocational expert testified as to the *DOT* classification of the job. (Tr. 47). The ALJ satisfied his obligation at the second phase in ascertaining the requirements of her job as a housekeeper.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. The ALJ asked the vocational expert whether someone at

14

Claimant's determined RFC could perform the jobs which constituted Claimant's past relevant work. The vocational expert stated Claimant could perform the past relevant work of housekeeper. (Tr. 47). Consequently, the ALJ fulfilled his obligation in the third phase. This Court finds no error in the ALJ's step four analysis.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 21st day of February, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE